UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| THOMAS MAY, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff(s), | )<br>) |
| v. | ) Case No. 1:22-CV-79-SNLJ<br>) |
| MAKITA U.S.A., INC., | )<br>) |
| Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Thomas May is suing defendant Makita U.S.A., Inc. for economic damages, alleging that defendant intentionally omitted an expiration date label on its product, a type of bonded abrasive wheel that is used to cut metal and concrete. [Doc. 1.] Defendant moves for dismissal of all claims under Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 12(b)(1) (lack of subject-matter jurisdiction). [Doc. 12.] Plaintiff seeks to voluntarily dismiss his claims for strict liability (Counts IV and V) and negligence (Count VI) without prejudice. [Doc. 21 at 31 n.10.] Therefore, the Court will dismiss those claims without prejudice.

**I.    Factual Background**

Plaintiff's remaining claims are for violations of the California Consumer Legal Remedies Act (Count I), violations of the Missouri Merchandising Practice Act (Count II), Unjust Enrichment (Count III), and breach of implied warranty (Count VII).  For the

purposes of this motion to dismiss, all of plaintiff's facts are accepted as true. *Mark One Elec. Co., Inc. v. City of Kansas City, Mo.*, 44 F.4th 1061, 1065 (8th Cir. 2022).

Plaintiff is an Illinois resident. [Doc. 1 at ¶ 4.] Defendant is a corporation incorporated in the state of California with its principal place of business in California. *Id.* at ¶ 9. Defendant makes and sells abrasive wheels that are attached to power tools and used to cut metal and concrete by spinning at high speeds. *Id.* at ¶ 15. If a wheel broke while in use, it could cause serious injuries to the user. *Id.* at ¶ 78. Within the last two years, plaintiff purchased one or more of defendant's wheels at stores in Cape Girardeau, Missouri. *Id.* at ¶¶ 7, 12.[1] Plaintiff brings a class action claim "arising from the deceptive business practices of Defendant in the advertising, packaging, and labeling of a bonded abrasive wheel product . . . that was manufactured, produced, distributed, and/or sold by Defendant." *Id.* at ¶ 1.

When plaintiff bought the wheels, he thought he was buying a wheel that never "expired" because the wheel's packaging did not contain a clearly printed label that warned of an expiration date. *Id.* at ¶¶ 1 n.1, 8. Plaintiff alleges that the wheels should have been sold with a printed expiration date of three years after the day of manufacture because it is an industry standard in the United States to include a three-year expiration date for such wheels. *Id.* at ¶¶ 18–19. Plaintiff explains that at some point after the three-year expiration date, the wheels carry a risk—or even a certainty—that they will

---

[1] Defendant alleges that plaintiff has not pled with enough specificity to make out this claim. *See* [Doc. 26 at 4.] But at this stage, when all of plaintiff's facts are taken as true, plaintiff has pled facts sufficient to show that defendant makes and sells wheels and plaintiff bought one or more of them.

"give way, crack, split, explode, and fail" if used for their intended purpose. *Id.* at ¶¶ 7, 16. Thus, after three years, the wheels are useless because of an unacceptable risk that they may break while in use. *Id.* at ¶ 50.

But the fact that the wheels may break after three years is not the exact defect that plaintiff complains of. Instead, he claims that the defect is how the wheels are marketed, advertised, and labeled in that they lack a clearly printed expiration date that informs buyers when the wheels expire. Plaintiff makes clear that defendant intentionally wanted to mislead buyers in this respect. As a result, plaintiff—and other class members—suffered economic damages because they would not have bought the wheels, or they would have paid substantially less for the wheels, if they knew that the wheels expired after three years. *Id.* at ¶¶ 57, 89.

In addition, despite this apparently fatal flaw in the wheel, plaintiff wishes to keep buying the very same flawed wheel "due to, among other considerations, convenience and availability." *Id.* at ¶ 22. Plaintiff thus seeks an injunction requiring defendant to label the wheels with plaintiff's proposed three-year expiration date. *Id.*

II. **Motion to Dismiss for Lack of Jurisdiction**

Defendant first moves for dismissal under Rule 12(b)(1), alleging that plaintiff lacks Article III standing in that plaintiff alleges no injury in fact. The parties address the issue as a facial attack on jurisdiction, the standard of review for which is the same as that as a motion to dismiss under Rule 12(b)(6). *Carlsen v. GameStop, Inc.*, 833 F.3d 903,

3

908 (8th Cir. 2016). Under this standard, plaintiff must allege enough facts that demonstrate a plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all facts alleged in the complaint as true. *Mark One Elec. Co.*, 44 F.4th at 1065. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### A. Plaintiff's Standing for Economic Injury Damages

Plaintiff claims he suffered economic injury—the injury in fact—by overpaying for defendant's wheels. [Doc. 1 at ¶¶ 44, 50, 57–58, 89.] Defendant argues that plaintiff suffered no injury under this Circuit's manifest defect rule. [Doc. 13 at 14–15] (citing *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009)). Under that rule, in products liability actions, plaintiffs who claim economic damages from paying an inflated purchase price for a defective product must show that they bought a product that actually manifested the complained-of defect. *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) ("It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."); *see also Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021) (finding no economic injury when certain buyers of an ATV failed to show that the product they purchased manifested the complained-of defect).

To be clear, if this case were a defective products or products liability case, defendant would be correct that plaintiff's claim is barred by the manifest defect rule.

4

But calling this case a defective products case is a misnomer. After voluntarily dismissing his strict liability and negligence claims, plaintiff's remaining claims are rooted in misrepresentation under state consumer protection laws, breach of implied warranty, and unjust enrichment—causes of action that sound in contract and fraud, not products liability or negligence. Again, plaintiff does not argue that the wheel itself is defective, but rather the "product defect" is the "failure to include a clear expiration label" that led to defendant's "deceptive business practices." [Doc. 1 at ¶ 1, 1 n.1.] Instead, plaintiff contends that he has standing under the benefit of the bargain theory.

As plaintiff points out, the Eighth Circuit recognizes Article III injury in fact when plaintiffs suffer an economic loss of the benefit of the bargain. "[A] plaintiff who has 'produced facts indicating it was a party to a breached contract' has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011)). A plaintiff who overpays for a product has a cognizable Article III injury. *See id.* at 909 ("Carlsen alleged that he has suffered damages . . in an amount equal to the difference between the value of the subscription that he paid for and the value of the subscription that he received, *i.e.*, a subscription with compromised privacy protection.") This theory extends both to the sale of services and, as here, tangible goods. *Cf. George v. Omega Flex, Inc.*, 874 F.3d 1031, 1032 (8th Cir. 2017) ("George's assertions of paying more than [corrugated stainless-steel tubing] is worth and the consequent loss in value of the structures are economic injury sufficient to establish Article III standing.")

5

In short, plaintiff pleads economic injury in fact in that 1) defendant intended to misrepresent to buyers that its wheels did not expire by intentionally omitting an expiration date on its wheels; 2) plaintiff relied on that representation in buying defendant's wheels; and 3) that he would not have paid the purchase price—or take the risk of using a wheel without an expiration date—if he knew that the wheels did expire. [Doc. 1 at ¶¶ 50, 57, 87, 89.]  The complaint specifically states "[h]ad Plaintiff May known that the Defective Products had an expiration date or shelf life, [he] *would not have purchased them or would have paid significantly less for the product.*"  *Id.* at ¶ 89 (emphasis added); *see also Id.* at ¶ 57.  Plaintiff's alleged overpayment is an Article III injury in fact for his past purchases of the wheels.

### B. Plaintiff's Standing for Injunctive Relief

Just because plaintiff has standing to bring claims for economic damages does not mean that he has standing for injunctive relief. To obtain injunctive relief, plaintiff must plead that he faces a real and immediate threat that he will suffer a similar injury in the future. *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting *Lujan*, 504 U.S. at 564) ("Such 'some day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Plaintiff's entire justification for injunctive relief under his remaining causes of action is that he wishes to purchase more of defendant's wheels, but cannot currently do so with confidence:

6

> Despite being misled by Defendant's deceptive advertising, packaging, and labeling, Plaintiff wishes <u>to continue purchasing the Defective Product</u> due to, among other considerations, convenience and availability. However, absent injunctive relief to prevent Defendant from selling abrasive wheel products without clear and understandable advertising, packaging and/or labeling in the future, Plaintiff will be unable to rely with confidence on the information provided to ensure that abrasive wheel products purchased from Defendant are not expired or nearly expired at the time of purchase and used prior to expiration . . . This uncertainty, <u>in combination with the desire to continue to purchase abrasive wheels from this Defendant in the future constitutes</u> an ongoing injury that can only be remedied through the granting of injunctive relief and preventing Defendant from selling abrasive wheel products without an easily read and understood expiration date located on the face of the product. . .

[Doc. 1 at ¶ 22] (emphasis added).

This claim is fundamentally flawed. Plaintiff can no longer claim to be misled by defendant's omission of an expiration date because he now knows of the product defects he complains of and can elect to not buy the product. In other words, plaintiff's knowledge of the misrepresentation precludes his reliance on the misrepresentation, thus there is no cause of action, much less an Article III injury

### III.    Motion to Dismiss for Failure to State a Claim

Having established that plaintiff has an Article III injury in fact to pursue his claims under the benefit of the bargain theory as to his prior purchases, the Court turns to defendant's other grounds for dismissing plaintiff's remaining counts under Rule 12(b)(6).

7

A. <u>Count I: Violation of the California Consumer Legal Remedies Act (CLRA)</u>

Plaintiff does not seek damages under the CLRA, Cal. Civ. Code § 1770 *et seq*, he seeks injunctive relief. [Doc. 1 at ¶ 45; Doc. 21 at 24–25.] As discussed, plaintiff does not have standing to seek injunctive relief. Accordingly, Count I is dismissed without prejudice. The Court makes no ruling on whether the California law applies to plaintiff—an Illinois resident who purchased the wheels in Missouri—or whether plaintiff complied with the CLRA's notice requirements, whatever those may be.

B. <u>Count II: Violations of the Missouri Merchandising Practice Act (MMPA)</u>

For a claim under the MMPA, plaintiff must show that he 1) bought the wheels in question, 2) for personal, family, or household purposes, 3) that he suffered an ascertainable loss, and 4) the ascertainable loss was the result of an unlawful practice under the MMPA. *Polk v. KV Pharm. Co.*, No. 4:09-CV-00588-SNLJ, 2011 WL 6257466, at *4 (E.D. Mo. Dec. 15, 2011) (citing Sec. 407.025(1), RSMo). Because plaintiff's MMPA action pertains to fraud—obviously an unlawful practice—he must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Johnsen v. Honeywell Int'l Inc.*, No. 4:14-CV-594-RLW, 2016 WL 1242545, at *2 (E.D. Mo. Mar. 29, 2016). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (cleaned up).

8

To recover under the MMPA, plaintiff must also establish that 1) in buying the wheels, plaintiff acted as a reasonable consumer would, 2) that defendant's unlawful acts would cause a reasonable person to enter the same transaction, and 3) that plaintiff can show individual damages with sufficient objective evidence to allow the loss to be calculated to a reasonable degree of certainty. Sec. 407.025(2)(a)–(c), RSMo. Finally, plaintiff must also satisfy the MMPA's scienter requirement, which requires a showing that defendant knew of the existence of the defect but withheld material facts from plaintiff. *See Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. App. W.D. 2009).

Here, plaintiff has sufficiently pled the heightened requirements of Rule 9(b) for his MMPA claim. "The who" is defendant. "The what"—the fraud in question—is defendant's misrepresentation that the wheels do not expire by intentionally omitting an expiration date on the label. *See, e.g.*, [Doc. 1 at ¶ 16]. "The where" is the place of purchase; plaintiff pled that he bought the wheels at a Harbor Freight Tools store, where defendant sells its wheels. [Doc. 1 at ¶¶ 15, 23.] Defendant alleges that Makita, Inc. does not even sell wheels at Harbor Freight Tools stores, [Doc. 13 at 25], but plaintiff's factual allegations, even if subsequently proven wrong, are accepted as true for Rule 12(b)(6) review.

"The when" is the two-year class period when plaintiff bought the wheels, not necessarily the specific dates he bought wheels. Plaintiff sufficiently pled that the misrepresentations occurred within the past two years when he viewed the wheels' label and then bought the wheels. Furthermore, plaintiff alleges a systemic scheme of misrepresentation by defendant in that the wheels' label was intended to deceive *every*

9

buyer, not just plaintiff specifically. *Cf. United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020) (finding that plaintiff was not required to allege specific dates of every instance of fraud "[w]hen a plaintiff alleges that a defendant engaged in a systematic practice or scheme. . . .")

Finally, "the how." Plaintiff sufficiently alleges that the wheels' labels are misleading because they do not have an expiration date, which communicates to reasonable buyers that the wheels are "safe to use" for years and years, when, allegedly, the wheels expire after three years. *See, e.g.*, [Doc. 1 at ¶ 50.] The omitted fact is material because it is one that "a reasonable consumer would likely consider to be important in making a purchasing decision." 15 Mo. C.S.R. § 60-0.010(1)(C).

As to the scienter requirement, plaintiff sufficiently pleads that defendant knew that the wheels expired after three years and that it was industry standard to put an expiration date on the wheel with a "use-by date" of three years. [Doc. 1 at ¶ 18.] Granted, plaintiff's supposed "industry standard" comes from European and British authorities, and it remains to be seen whether this standard applies to U.S. manufacturers, as plaintiff so claims. [Doc. 1 at ¶ 19.]

Lastly, defendant alleges that plaintiff has failed to allege damages with enough specificity to make out a claim under the MMPA. [Doc. 13 at 26–27.] Defendant insinuates that plaintiff must plead a specific dollar amount of damages in order to make out a claim under the MMPA, but the court does not read the statute as requiring such a technical showing at the pleadings stage. Plaintiff alleges that he overpaid for defendant's wheels in that the fair market value of the wheels was actually lower than

what he bought them for.  The difference between the purchase price of the wheels and the actual value of the wheels is a value that can "be calculated with a reasonable degree of certainty."  Sec. 407.025(2)(c), RSMo.

Nonetheless, defendant cites to two cases in support of its argument: *Hennessey v. Gap, Inc.*, No. 4:19-CV-01867-SEP, 2022 WL 4447399, at *6 (E.D. Mo. Sept. 23, 2022) and *Polk v. KV Pharm Co.*, No. 4:09-CV-00588-SNLJ, 2011 WL 6257466 (E.D. Mo. Dec. 15, 2011).  [Doc. 13 at 26–27; Doc. 21 at 11–12.]  Both cases are inapposite.  In *Hennessey*, plaintiff failed to give any facts that would show that "the actual fair market value of Defendants' products was less than the displayed sale price."  2022 WL 4447399, at *6 (rejecting claim that plaintiff suffered an economic loss when she bought clothing at regular price but then the same clothing went on a sale at a lower, discounted price).  In *Polk*, plaintiff claimed economic damages from buying a certain medicine based solely on the fact that Food and Drug Administration *alleged* that the same type of medicine may have been adulterated or defective, but plaintiff did not provide any actual support that his medicine was adulterated or defective.  *Id.* at *6.  In that case, FDA allegations and a corresponding Consent Decree between the FDA and the defendant were not enough to establish independent facts that the medicine plaintiff bought was adulterated.  Thus, plaintiff could not prove actual economic loss.  In contrast to those two cases, plaintiff here points to specific facts showing how the wheels' market value was actually less than the purchase price.  *See, e.g.*, [Doc. 1 at ¶ 50.]

11

Accordingly, plaintiff pleads a cognizable claim under the MMPA and defendant's motion to dismiss this count will be denied.  For the same reasons discussed earlier, plaintiff does not have standing to pursue injunctive relief under the MMPA.

### C.  Count III: Unjust Enrichment

To state a claim of unjust enrichment under Missouri law, plaintiff must plead facts showing that 1) defendant was enriched by the receipt of a benefit, 2) at the expense of the plaintiff, and 3) it would be unjust to allow defendant to keep that benefit.  *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. App. W.D. 2019) (quoting cases).  Defendant argues, inter alia, that plaintiff cannot plead a claim for unjust enrichment when he has an adequate remedy at law available to him.  Plaintiff counters that he may plead inconsistent theories in the alternative under Federal Rule of Civil Procedure 8.  *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")

"Unjust enrichment is an equitable remedy based on the concept of a quasi-contract. . . ."  *Reyner v. Crawford*, 334 S.W.3d 168, 174 (Mo. Ct. App. 2011). "[E]quitable relief is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete."  *Ballard v. City of Creve Coeur*, 419 S.W.3d 109, 117 (Mo. App. E.D. 2013).  Plaintiff has two adequate statutory remedies—the MMPA and implied warranty—that plaintiff argues entitle him to a full refund of the purchase price of the wheels.  [Doc. 1 at ¶¶ 53 89.]  Even with Rule 8's allowance for pleading inconsistent theories, because plaintiff has adequate statutory remedies available to him, he cannot

bring his claim for unjust enrichment. *See S & P Properties, Inc. v. City of Univ. City*, 178 S.W.3d 579, 584 (Mo. App. E.D. 2005) (citing *Ackerman Buick, Inc. v. St. Louis Cnty.*, 771 S.W.2d 343 (Mo. banc. 1989)) (dismissing count for unjust enrichment because defendant had "an adequate statutory remedy available").

### D. Count VII: Breach of Implied Warranty

Finally, defendant alleges that plaintiff's Breach of Implied Warranty claim should be dismissed because plaintiff failed to provide pre-suit notice as required by Section 400.2-607(3)(a), RSMo. "[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or *be barred from any remedy. . . .*" *Id.* (emphasis added). Plaintiff alleges that he gave defendant notice by filing this lawsuit. [Doc. 1 at ¶ 90.] But as this Court has said, Missouri law requires that plaintiff give defendant pre-suit notice before filing breach of warranty claims. *Tucker v. Gen. Motors LLC*, No. 1:20-CV-254-SNLJ, 2021 WL 2665761, at *4–5 (E.D. Mo. June 29, 2021), *rev'd in part*, No. 21-2698, 2023 WL 310225 (8th Cir. Jan. 19, 2023).

At the very least, plaintiff had to give pre-suit notice to the immediate seller of the defective goods, even if plaintiff chose only to sue the manufacturer. *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. App. S.D. 1989). But plaintiff does not allege that he gave pre-suit notice to either the direct seller (the store where he purchased the wheels) or to defendant (the manufacturer). Plaintiff's assertion that "Defendant knew about the defect, making a notice unnecessary," is also insufficient to defeat the pre-suit notice requirement. [Doc. 1 at ¶ 90.] Plaintiff does not even attempt

13

to explain this theory in his briefing, nor does he cite to any case law in support. Accordingly, plaintiff is barred from bringing his breach of implied warranty claims.

### E. Class Certification

The Court defers making a class certification determination, and the Court will order additional briefing on the propriety of class action certification as to plaintiff's remaining MMPA claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss plaintiff's complaint [Doc. 12] is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that plaintiff's Counts I, III, IV, V, VI, and VII are DISMISSED without prejudice.

**IT IS FURTHER ORDERED** that plaintiff be given thirty (30) days from the date of this order to file an amended complaint and to replead any counts that were dismissed without prejudice. Defendant will be given twenty-one (21) days from the date of plaintiff's filing to file responsive pleadings.

**IT IS FINALLY ORDERED** that the parties submit additional briefing on the propriety of class certification for plaintiff's Count II within thirty (30) days of this order.

Dated this 26th day of January, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE