## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| THOMAS MAY, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | Case No. 1:22-CV-79-SNLJ |
| MAKITA U.S.A., INC., | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Thomas May is suing defendant Makita U.S.A., Inc. for allegedly failing to put an expiration date label on its product, a type of organic bonded abrasive wheel used to cut metal and concrete.  [Doc. 32.]  The Court dismissed Counts I, III, IV, V, VI, and VII plaintiff's original petition [Doc. 29], but granted plaintiff leave to file an amended complaint.  Plaintiff filed his First Amended Complaint (FAC) [Doc. 32], in which he repleads two of his previously-dismissed claims and amends his claim under the Missouri Merchandising Practices Act.  Defendant moves for dismissal of all plaintiff's claims in the FAC under Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 12(b)(1) (lack of subject-matter jurisdiction).[1]   For the reasons discussed below, defendant's motion will be granted in part and denied in part.

---

[1] All rule references are to the Federal Rules of Civil Procedure unless otherwise stated.

## I.   Factual Background

Plaintiff's FAC includes an amended count for a violation of the Missouri Merchandising Practice Act (Count I), and the FAC has repleaded counts for breach of implied warranty (Count II) and violations of the California Consumer Legal Remedies Act (Count III).  The facts come from plaintiff's FAC.  For the purposes of this motion to dismiss, all of plaintiff's facts are accepted as true.  *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010).

Plaintiff is a citizen of Illinois.  FAC at ¶ 26.  Defendant is a corporation incorporated in the state of California with its principal place of business in La Mirada, California.  *Id.* at ¶ 32.  Defendant makes and sells organic bonded abrasive wheels ("wheel" or "wheels") used to cut metal and concrete.  The wheels get attached to power tools that spin at blistering speeds.  *Id.* at ¶ 38.  Thus, if a wheel broke while in use, it could cause serious injuries.  *Id.* at ¶ 16.  Plaintiff purchased one or more of defendant's wheels within the last five years at a Tractor Supply Company store in Cape Girardeau, Missouri.  *Id.* at ¶ 29.  Plaintiff brings a class action claim "arising from the deceptive business practices of Defendant in the advertising, packaging, and labeling of a bonded abrasive wheel product . . . that was manufactured, produced, distributed, and/or sold by Defendant."  *Id.* at ¶ 1.

Plaintiff thought he was buying a wheel that did not expire because the wheel's packaging did not have a clearly-printed label that warned of the wheel's expiration date.  *Id.* at ¶¶ 1 n.1, 4–6.  But in fact, the wheels have an expiration date of three years, and it is an industry standard in the United States to include a three-year expiration date for such

wheels. *Id.* at ¶¶ 6, 8–11. After the three-year expiration date, the wheels become too brittle or weak to use safely and reliably. *Id.* at ¶ 6. Likewise, several other leading organic bonded abrasive wheel manufactures put expiration dates on their wheels. *Id.* at ¶¶ 11–13. Thus, after three years, the wheels are useless because of an unacceptable risk that they may break while in use, which could cause serious injuries to the user or bystanders. *Id.* at ¶¶ 16, 71, 90.

Plaintiff's complaint is that defendant failed to properly label its wheels with a clearly-printed expiration date informing buyers of when the wheels should no longer be used. *Id.* at ¶ 20. Because of the omission of a clearly-printed expiration date, plaintiff and other consumers suffer out-of-pocket damages by either purchasing worthless wheels that already expired or wheels that are worthless (or worth less) because there is no way for a reasonable consumer to tell when the product expires, thus rendering them unsafe to use. *Id.* at ¶¶ 22–23.

Plaintiff claims that defendant, based on well-known and then-existing industry standards, knew that the wheels had an expiration date but failed to disclose these details to customers. *Id.* at ¶ 47. Because plaintiff thought he was buying one thing (a wheel that never expired) but instead received another (a wheel that expired after three years), plaintiff—and other class members—overpaid for the wheels. *Id.* at ¶¶ 44–46, 61. Despite defendant's past misrepresentations, plaintiff pleads that he would buy more of its wheels if defendant put a clear expiration date on them. *Id.* at ¶ 51. Until that time, plaintiff will not buy any more of defendant's wheels because he has no way of knowing when the wheels expire. *Id*

3

## II.     Motion to Dismiss for Lack of Jurisdiction

### A.     Defendant's Attack on Plaintiff's Article III Standing

Defendant again seeks dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiff completely lacks Article III standing to pursue either monetary or injunctive relief.  "Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim."  *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012).  The Court assumes this is a facial attack on plaintiff's Article III standing, so plaintiff is entitled to the same procedural safeguards as a 12(b)(6) motion to dismiss. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

Rule 12(b)(6) requires plaintiffs to allege enough facts that demonstrate a plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts all facts alleged in the complaint as true. *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010).  But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

A plaintiff's access to federal court depends on having Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  Article III standing is a federal question and does not depend on whether a party would have standing in a state

4

court.  *Miller*, 688 F.3d at 933.  This "irreducible constitutional minimum of standing" has three elements: an injury in fact, a causal connection between the injury and the conduct complained of, and the likelihood that the injury can be redressed by favorable decision. *Lujan*, 504 U.S. at 560–61.  Defendants argue that plaintiff lacks the injury-in-fact requirement.

An injury in fact requires a showing of a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339.  For an injury to be particularized, it must affect the plaintiff in a personal and individual way.  *Id.* at 339 (citing cases).  A concrete injury must be *de facto*, the injury must exist in reality, not the abstract.  *See Id.* at 340.  In conducting this analysis, "it is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."  *Carlsen*, 833 F.3d at 909 (cleaned up).

## B.   Plaintiff's Standing for Past Economic Damages

First, defendant argues that plaintiff lacks standing to pursue monetary damages, reiterating its belief that the Eighth Circuit's manifest defect rule applies to bar suits of this type, wherein plaintiff complains of a product defect but does not allege that his product suffered the complained of defect.  *See Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987 (8th Cir. 2021); *May v. Makita U.S.A., Inc.*, No. 1:22-CV-79-SNLJ, 2023 WL 417487, at *2–3 (E.D. Mo. Jan. 26, 2023) (discussing application of manifest defects rule).

As the Court explained in its previous order, [Doc. 29 at 4–6] this is not a defective products case, so the manifest defect rule does not apply.  Here, plaintiff's alleged injury stems from his overpaying for a product due to defendant's alleged fraudulent misrepresentations.  Thus, his claims are not fundamentally based on a product defect, they are fundamentally based on fraud.  "In short, plaintiff pleads economic injury in fact in that 1) defendant intended to misrepresent to buyers that its wheels did not expire by intentionally omitting an expiration date on its wheels; 2) plaintiff relied on that representation in buying defendant's wheels; and 3) that he would not have paid the purchase price—or take the risk of using a wheel without an expiration date—if he knew that the wheels did expire." [Doc. 29 at 6.]  Therefore, plaintiff's alleged overpayment is an Article III injury in fact for his past wheel purchases.

C.  Plaintiff's Standing for Injunctive Relief

Plaintiff amended his request for injunctive relief, which defendant seeks to dismiss for lack of standing.  To obtain injunctive relief, plaintiffs are required to plead that there is a real and immediate threat that they will suffer a similar injury in the future.  *See Harmon v. City of Kansas City*, 197 F.3d 321, 327 (8th Cir. 1999).  "Some day intentions," without any concrete plans or specification of when the "some day" will be, do not satisfy the actual-or-imminent injury requirement.  *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting *Lujan*, 504 U.S. at 564).  Here, plaintiff pleads he would buy more of defendant's wheels if they had a clearly-printed expiration date:

Despite being misled by Defendant's deceptive advertising, packaging, and labeling, Plaintiff wishes to continue purchasing the Defective Product due to, among other considerations, convenience, and availability. Plaintiff affirmatively states that he would purchase the products again in the future if Defendant were to put a clear expiration date on them. . . Absent injunctive relief . . . Plaintiff and the class members will still have no way of knowing when the product expires. Thus, Plaintiff and the class members face a real, concrete, and immediate threat that they will again suffer similar economic injury in the future.

[Doc. 32 at ¶ 51] (emphasis added). Despite plaintiff's say so, this amended pleading does not show how he will personally suffer an economic injury absent injunctive relief. First, plaintiff does not plead that his inability to purchase defendant's wheels leads to any economic injury. Nor is plaintiff at risk of defendant allegedly misleading plaintiff again through deceptive packaging because he pleads that he will not buy another wheel unless there is an expiration date on it. His past exposure to potentially illegal conduct does not justify injunctive relief because he cannot show any continuing, present adverse effects. *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Plaintiff fails to meet the standing requirements as laid out by *Park* and other cases. As previously explained, "[p]laintiff can no longer claim to be misled by defendant's omission of an expiration date because he now knows of the product defects he complains of and can elect to not buy the product. In other words, plaintiff's knowledge of the misrepresentation precludes his reliance on the misrepresentation, thus there is no cause of action, much less an Article III injury." [Doc. 29 at 7.] Even if plaintiff were to buy another of defendant's wheels, he would make his purchase fully informed of the risks associated with the wheels, and he would, as a reasonable consumer, factor those risks into

7

his purchasing decision, thereby receiving the full "benefit of the bargain" of his purchase. In short, plaintiff's pleading is devoid of any impending personal economic injury from defendant's ongoing sale of the wheels as they are.

Of note, plaintiff cites no mandatory authority on this issue, either from this Circuit or the United States Supreme Court. Instead, he relies on district court cases to support his theory of Article III injury, but those cases do not justify his theory that he personally suffers ongoing economic injury from the mere fact that he will not purchase any of defendant's wheels until they have expiration dates. First, plaintiff cites to *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965 (W.D. Mo. 2021) ("*Browning*"), but the Court is not bound by that case, nor does the Court find it persuasive. As noted by the *Browning* court, injunctive relief is for preventing a future injury of the kind plaintiff complains of. *Id.* at 976–77. Here, plaintiff's alleged injury is economic injury from overpaying for wheels due to deceptive practices, yet he does not plead how he is at a future risk of being deceived again, or how he is at risk of overpaying for wheels that he will not buy unless they have an expiration date.

Plaintiff's case also differs factually from *Browning*, justifying a different result even if that case correctly applied Article III standing. *Browning* concerned a lawsuit over the formulation of a consumable alcoholic beverage and the precise ingredients of those drinks. The *Browning* plaintiffs pled they "lack personal knowledge as to Defendant's specific business practices, leaving doubt in their minds as to the possibility that at some point in the future the Products could contain distilled liquors or wine." *Id.* at 976. In this case, plaintiff does not face the same uncertainty. He would be able to tell whether

8

defendant's wheels have a clearly-printed expiration date or not.  Finally, plaintiff insists he will not purchase more of defendant's wheels unless it has an expiration date.  [Doc. 32 at ¶ 51.]  Therefore, plaintiff is in no danger of injury from any of defendant's ongoing alleged deception.

Plaintiffs other relied-upon cases reiterate *Browning's* legal reasoning, which is unconvincing as applied to the facts of this case, and the Court similarly finds those cases to be unpersuasive.  *See Early v. Henry Thayer Co., Inc.*, No. 4:20-CV-1678 RLW, 2021 WL 3089025, at &16–17 (E.D. Mo. July 22, 2021) (relying, in part, on *Browning* to find standing for injunctive relief when plaintiff pled an ongoing injury of an unfulfilled desire to buy defendant's product in the future if defendant's properly labeled its product); *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 706–08 (E.D. Mo. 2018) (finding standing for injunctive relief when plaintiff pled an ongoing injury of an unfulfilled desire to buy more of defendant's raisins in the future if defendant were to put more raisins in the raisin boxes or otherwise reduce the size of the boxes).

The *Early* and *Hawkins* courts cited to a popular refrain from the case of *Chester v. TJX Companies, Inc.*:

> It is inconceivable to think prospective relief in the false advertising context is bound by the rules of "fool me once, shame on you; fool me twice shame on me." The Court is unwilling to play Defendants' game, and refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements.

No. 5:15-CV-1437-ODW (DTB), 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016). Likewise, this Court endorses that language—simply because plaintiffs are fooled once by

a defendant does not mean they will never be deceived again by that defendant under similar circumstances.   Article III injury exists every time a seller—through misrepresentation or omission of material facts on a product's packaging—deceives a buyer into overpaying for that product.  But in this case, it just so happens plaintiff pleads no facts showing there is the possibility of him being fooled *twice*.  He was deceived once, he now knows of defendant's tricks, and he has pled nothing to suggest he will be deceived "twice" again.  *See Darisee v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *4 (N.D. Cal. Aug. 15, 2016) (holding that plaintiff lacked standing for injunctive relief because he was "not going to trust what [defendant company] says now," and thus faced no threat of future injury).  Even if defendant's practices be unlawful, they do not pose a particularized, personal threat of future injury to plaintiff.

Plaintiff does not plead or brief any theory of Article III standing for injunctive relief other than his own personal standing, which he lacks.  Therefore, plaintiff does not have personal Article III standing to seek injunctive relief, but the Court abstains from deciding whether a class, once formed, would have standing to pursue injunctive relief for defendant's deceptive practices.

## III.   Motion to Dismiss for Failure to State a Claim

Having established that plaintiff has standing to pursue claims for damages based on his past purchases of defendant's wheels, the Court turns to defendant's motion to dismiss plaintiff's remaining counts.  Each are discussed in turn.

A.      Count I: Violations of the Missouri Merchandising Practice Act (MMPA)

Defendant moves to dismiss plaintiff's MMPA for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  As discussed in this and prior orders, plaintiff has Article III standing for past economic damages.  The Court now turns to the familiar standards of a Rule 12(b)(6) motion to dismiss, discussed *supra*.

Contrary to defendant's suggestion, this Court's prior order indeed granted plaintiff leave to file an amended complaint, as well as to replead any dismissed counts.  [Doc. 29 at 14.]  In his FAC, plaintiff has chosen to amend his prior MMPA claim from his original complaint, [Doc. 1], the only count to survive defendant's first motion to dismiss for failure to state a claim.  *See* [Doc. 29.]  If anything, plaintiff's FAC adds more detail and particularity, especially on plaintiff's proposed labeling standards, which he claims defendant knew about.  *See* FAC at ¶¶ 8–14.  Nevertheless, defendant raises several arguments as to why the Court should change its mind and now dismiss the MMPA claims.

For a claim under the MMPA, plaintiff must show that he 1) bought the wheels in question, 2) for personal, family, or household use, 3) that he suffered an ascertainable loss, and 4) the ascertainable loss was the result of an unfair practice.  *Polk v. KV Pharm. Co.*, No. 4:09-CV-00588-SNLJ, 2011 WL 6257466, at *4 (E.D. Mo. Dec. 15, 2011) (citing § 407.025.1(1), RSMo.).  Because MMPA actions pertain to fraud, plaintiff must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Johnsen v. Honeywell Int'l Inc.*, No. 4:14-CV-594-RLW, 2016 WL 1242545, at *2 (E.D. Mo. Mar. 29, 2016); Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")  "In other words, Rule 9(b) requires

11

plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (cleaned up).

First, defendant alleges that plaintiff failed to state the "when" requirement of Rule 9(b) with enough particularity in that plaintiff has more than doubled his original timeline of events. In his original complaint, plaintiff pled that he purchased one or more of defendant's wheels within the past two years. [Doc. 1 at ¶ 7.] Now, plaintiff pleads he purchased wheels within the past five years. FAC at ¶ 29. The Court agrees with defendant that this is an eyebrow-raising change. Even though nearly a year has passed since plaintiff originally filed his lawsuit, this does not account for tacking on three additional years to plaintiff's purchasing timeline. But this goes to plaintiff's problem of eventually having to prove that he actually purchased defendant's products, which is a problem that does not exist at the pleadings stage when all of plaintiff's well-pled facts are taken as true. Defendant points to no error in law from the Court's prior order; this five-year time frame (once a two-year time frame) is the class period and otherwise plaintiff sufficiently pleads that he viewed the wheels' label and then bought one or more within the past five years. [Doc. 29 at 9–10.] Therefore, the Court's decision remains the same. Plaintiff sufficiently alleged the "when" of Rule 9(b).

Defendant then takes another stab at attacking the sufficiency of plaintiff's other allegations. For instance, defendant argues that plaintiff did not sufficiently plead which of defendant's products, if any, he purchased. But plaintiff specifically pleads that "what" he purchased was a "Makita 4'' cutting wheel and a 4½'' grinding wheel. . . ." FAC at ¶

12

29.  Defendant responds that plaintiff did not plead that these wheels are "organic bonded" wheels that meet plaintiff's own definition of a defective product, but plaintiff did.  He pleads that his purchased wheels were "Defective Products," FAC at ¶ 29, and plaintiff earlier defined "Defective Products" as "an organic bonded abrasive wheel."  FAC at ¶ 2. Plaintiff re-alleged and incorporated these facts into his MMPA count.  FAC at ¶ 67. Therefore, plaintiff's FAC, when read altogether, alleges that he purchased one of defendant's organic bonded wheels.

In its previous motion to dismiss, defendant argued that plaintiff's pleaded "industry standard"—that all organic bonded abrasive wheels bear a clearly-printed three-year expiration date—did not exist in the United States, but the Court rejected that argument because plaintiff pled enough facts that, when taken as true, would show that an industry standard existed.  [Doc. 29 at 10.]  Now, defendant brings a new argument that plaintiff's pleadings are not sufficient to show how or when defendant became aware of this industry standard such that defendant knowingly omitted material information from consumers. This Court finds that the FAC pleads facts to suggest that this industry standard existed at the time of plaintiff's injury and that defendant knew or should have known about it.

For example, plaintiff pleads that this standard has existed for "decades," FAC at ¶ 9, and this standard has been followed by the Federation of European Producers of Abrasives, *Id.* at ¶ 10; a worldwide trade organization, the Organization for the Safety of Abrasives, FAC at ¶ 11; and multiple of defendant's competitors.  *Id.* at ¶¶ 12–13. Whatever difficulty plaintiff may have in actually proving these facts, plaintiff pleads enough facts to state a plausible claim that that this is industry standard in the United States

and that defendant knew or should have known about this standard but failed to follow it, which deceived consumers into overpaying for defendant's wheels. In sum, plaintiff adequately pleads the details of defendant's fraudulent acts, including when the acts occurred (when he purchased the wheels at the store), who engaged in them (defendant), and what was obtained as a result (plaintiff's overpaying for wheels). *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (enumerating Rule 9(b)'s particularity requirements).

Finally, defendant alleges that plaintiff failed to plead two crucial elements of his MMPA claim. First, that plaintiff failed to plead facts indicating that his purchase of the wheels were for personal, family, or household use, as required by Sec. 407.025.1(1), RSMo. Second, that plaintiff fails to plead "[i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." § 407.025.1(1)(2)(c)

As to defendant's first argument, the Court finds that plaintiff sufficiently pled he purchased the wheels for personal, family, or household use. He pleads that he, a "person", went to a Tractor Supply Company store and purchased one or more of defendant's wheels for personal, family, or household use. FAC at ¶ 29. These facts indicate that plaintiff acted as an individual consumer and that he bought the wheels for personal, family, or household use. This is not the case where there is an obvious, alternative explanation for plaintiff's purchase that would require him to plead facts to rebut that explanation. *See, e.g.*, *Noe v. Chastain*, No. 6:19-CV-3030-SRB, 2019 WL 1560464, at *4 (W.D. Mo. Apr. 10, 2019) (plaintiff alleged that she entered the transaction at issue "on behalf of her

14

business," which negated the MMPA requirement). Plaintiff need not plead his specific purpose for purchasing the product to satisfy the MMPA's "personal, family, or household use" requirement.

Finally, the Court again rejects defendant's argument that plaintiff fails to plead damages with enough specificity, and for the same reasons as the Court explained in its prior order. "Plaintiff alleges that he overpaid for defendant's wheels in that the fair market value of the wheels was actually lower than what he bought them for. The difference between the purchase price of the wheels and the actual value of the wheels is a value that can 'be calculated with a reasonable degree of certainty.'" [Doc. 29 at 10–11] (quoting § 407.025.1(2)(c), RSMo); *see also Tucker v. Gen. Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023). At the pleadings stage, plaintiff does not need to plead a specific dollar amount of damages. Even so, plaintiff amended his pleadings to include a specific dollar amount. FAC at ¶¶ 33, 61. The FAC alleges that the plaintiff's wheels are worth at least ninety percent less than what he paid for them because of the risk involved in using a product that may or may not have expired. FAC at ¶ 61. Thus, a $3.00 wheel would be worth 30 cents, if it has any value at all. *Id.*

Even if plaintiff's math is debatable, he pleads sufficient facts to show that an expiring wheel without a clearly-printed expiration date is objectively worth less than an expiring wheel with a clearly-printed expiration date. Defendant's citation to *Briehl v. Gen. Motors Corp.* is inapposite because that case dealt with application of the Eighth Circuit's manifest defect rule to a defective products case, which, as discussed *supra*, this case is not. 172 F.3d 623, 628 (8th Cir. 1999) (applying manifest defect rule to hold that

plaintiffs pled no basis for damages when they did not plead the purchased product exhibited the complained-of defect).  Accordingly, the Court will deny defendant's motion to dismiss Count I of plaintiff's FAC.

> ### B.    Count II: Breach of Implied Warranty

The Court previously dismissed plaintiff's breach of implied warranty claim for failing to give the required pre-suit notice.  [Doc. 29 at 13–14.]  Missouri requires a plaintiff to give pre-suit notice to either the immediate seller of a defective good or the manufacturer or "be barred from any remedy. . . ."  § 400.2-607(3)(a), RSMo; *Ragland Mills, Inc.*, v. General Motors Corp., 763 S.W.2d 357, 361 (Mo. App. S.D. 1989).   Plaintiff filed his complaint on June 10, 2023.  Plaintiff pleads he gave statutory notice to defendant on June 13, 2022 and to Tractor Supply Company, the immediate seller of the wheel, on February 20, 2023.  FAC at ¶ 84.  Obviously, plaintiff's provision of notice postdates his filing suit, which does not satisfy a pre-suit notice requirement.

Alternatively, plaintiff argues that he did not need to give defendant pre-suit notice because defendant had actual knowledge of the defect in the wheel's labeling.  FAC at ¶ 47.  In support of this position, plaintiff cites to a Seventh Circuit case interpreting Illinois law, *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 715 (7th. Cir 1992),  but that case does not shed light on how Missouri courts interpret its own Uniform Commercial Code statute. Next, he cites to *Jay V. Zimmerman Co. v. Gen. Mills*, *Inc.*, 327 F. Supp. 1198 (E.D. Mo. 1971), a case that concerned cross-suits for breach of contract relating to late delivery of goods.  In that case, the parties obviously negotiated for the delivery of goods by a certain

16

date, and so the delivering party (the plaintiff) had notice that it breached the contract when it delivered those goods late.  *Id.* at 1204.  Importantly, the court found that the receiving party (the defendant) gave the delivering party (the plaintiff) multiple pre-suit notices of the breach: "numerous telephone discussions, beginning at least as early as mid-August and continuing through November, 1969, were had relating to plaintiff's inability to meet defendant's 'tight timing schedule,' and that in the course of these discussions, plaintiff was 'informed' of its breach of contract."  *Id.*  Finally, the defendant sent a letter to the plaintiff after the late delivery, "explicitly stat[ing] that plaintiff had failed to achieve its obligation to meet defendant's tight timing schedule 'by wide margin.'"  *Id.*

Thus, plaintiff's case is distinguishable from *Jay V. Zimmerman*.  First, this is a breach of warranty, not a breach of contract case.  Second, it cannot be said that plaintiff's complained-of breach—an insufficiently labeled product—is as explicit and obvious to *both* the individual buyer and seller as is a negotiated sales contract.  After all, defendant had no way of knowing that plaintiff, as a specific individual, was going to buy one of defendant's wheels and then sue, even if defendant figured that someone, somewhere, was likely going to sue for breach.  Third, unlike in *Jay V. Zimmerman* when the defendant gave several pre-suit notices, here, plaintiff has not pled any facts to indicate he gave any notice at all before filing suit.  Therefore, plaintiff fails to plead any facts showing that he complied with the notice requirements of Sec. 400.2-607(3), and the Court will grant defendant's motion to dismiss as to Count II.

17

C.     Count III: Violation of the California Consumer Legal Remedies Act (CLRA)

Plaintiff asks for damages and injunctive relief under the CLRA.  FAC at ¶¶ 85–97. He also seeks to form a nationwide class under this section.  FAC at ¶ 53.  Defendant argues that plaintiff lacks standing to pursue either injunctive or monetary relief under the CLRA. As stated, plaintiff does not have Article III standing for injunctive relief.   The only remaining question is whether plaintiff has pled enough to sue for damages under the CLRA.

Defendant argues that plaintiff failed to give proper notice under the CLRA.  Cal. Civ. Code § 1782(a)(2).  That provision says that, at least thirty days before seeking an action for damages under the CLRA, the plaintiff must notify the person alleged to have committed the unlawful acts and that "[t]he notice *shall* be in writing and *shall* be sent by certified or registered mail . . . to the place where the transaction occurred or to the person's principal place of business *within California*."  *Id.* (emphasis added).  A plaintiff's failure to follow the clear text of the statute and to send notice to the proper place is an independently sufficient ground for granting a motion to dismiss.  *See Corbett v. PharmaCare U.S.*, Inc., 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021) (holding that plaintiff's service of notice to defendant's registered agent in Delaware and *not* its principal place of business in California warranted dismissal); *Kandel v. Brother Int'l Corp.*, No. CV 08-1040 DSF (RCx), 2009 WL 10429764, at *3 (C.D. Cal. May 12, 2009) (noting the CLRA's "specific choices" for giving notice and the absence of a statutory provision that "allows for notice in the manner likely to effectuate actual notice").

18

Plaintiff did not send his complaint to defendant's principal place of business in California. Instead, plaintiff sent his complaint to defendant's registered agent in Missouri. *See* [Doc. 1 at ¶ 9.]  From then on, plaintiff has only sent filings to defendant's counsel, who are also located in Missouri.  Plaintiff has pled no facts indicating he sent notice to defendant's principal place of business in La Mirada, California.  Plaintiff does plead that he gave a notice of breach letter to the place where the transaction occurred, Tractor Supply Company, but he pleads that was a "notice of breach letter" to meet the requirements of Sec. 400.2-607(3)(a), RSMo, and not the CLRA.  FAC at ¶ 84.  Because plaintiff does not have standing for injunctive relief and he failed to comply with the CLRA's specific notice requirements, plaintiff's CLRA count must be dismissed.  The Court does not reach defendant's other arguments for dismissal.

D.     Class Certification

The Court defers ruling on class certification for plaintiff's proposed Missouri sub-class for his MMPA count until after the parties have had opportunity to be heard on the issue.

19

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss plaintiff's First Amended Complaint [Doc. 35] is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERD** that plaintiff's Count II and III are **DISMISSED** without prejudice.

Dated this 24th day of May, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

20